## (June 4, 1964)

■ In the Matter of the Estate of GRACE P. LYNDE, Deceased. FIRST NATIONAL BANK OF CANTON, as Executor of GRACE P. LYNDE, Deceased, Appellant.— Appeal by the executor from a decree of judicial settlement entered in the Surrogate's Court of St. Lawrence County, in part upon the Surrogate's own motion. All parties having consented to the relief sought in the petition or having failed to appear, there is no respondent upon the appeal. The appellant executor contracted to sell decedent's residential real property for $15,000, a sum greatly in excess of the amount of its value as fixed in estate tax proceedings and in excess of its actual value as otherwise shown. It was subsequently discovered that a small landlocked parcel was subject to an option, conferred in 1900, providing that St. Lawrence Alumnae Association of Kappa Kappa Gamma should have "the opportunity to purchase the same at the best *bona fide*

offer that shall be made therefor". Thereupon, the contract vendee modified his offer with the result that the executor ultimately conveyed the optioned parcel to the Association for $1,500 and the remaining lands to the contract vendee for $13,500. Testatrix' very substantial estate, after profitable and expeditious administration, proceeded to judicial settlement without objection by any interested party. Surrogate Wells approved the judicial settlement and distribution except as to payment of executor's commissions and counsel fees, part of which were withheld while, upon his own initiative, he conducted a series of hearings apparently intended to determine whether the executor was in some way guilty of misconduct in connection with the sale of the realty, even though the sale price exceeded the value. There was, of course, no objection to the account on the part of anyone who was interested in the estate and even the attorney for the Association, which was in no way legally interested, when urged by the Surrogate to participate in the hearing, said that he "could not see where they had any claim" or "any standing". In a long opinion, so turgid as to be in some respects incomprehensible, the Surrogate found "negligence without malice", whatever adjudicatory significance that term may have, and imposed a so-called surcharge. Illustrative of the meaningless and contradictory findings are those that the executor "caused a loss to the estate of $500., and must be charged for such loss   *   *   *   actually no loss to the estate will result from the negligence, if the actual value of the land under the option is used". Whether there was "loss to the estate of $500" or "actually no loss to the estate", the Surrogate proceeded to surcharge the executor neither $500 nor zero, but $1,000, and this not for the benefit of the estate and in recoupment of loss to the estate, pursuant to the hornbook law which we had supposed was generally understood, but "to be paid directly to the Alumnae Assn." Obviously, there was no basis for any surcharge and no warrant for what would be, in effect, a gift of $1,000 to a stranger to the estate. The Surrogate's decision and direction with respect to the execution of a new deed verge upon the frivolous and do not require discussion. In displays of officious conduct and of singular unawareness of the judicial function and of the rights of parties in our system of adversary litigation, the record in this case far transcends those in other recent cases before us upon appeals from decisions of the same Surrogate. (*Matter of Bisnett*, 18 A D 2d 955; *Matter of Snell*, 17 A D 2d 490; *Matter of Ferris*, 2 A D 2d 826.) Equally disquieting, however, is the obliviousness or indifference, apparent in this case, to the most rudimentary standards of propriety. When asked, the Surrogate said that his wife was one of eight legatees given the right to select articles as "mementos" and thus one of the legatees to whom he had referred in previously indicating, without any warrant or justification, that the executor may have been guilty of misconduct in failing to give those legatees the opportunity to select valuable pieces of jewelry as "mementos", although the executor had proceeded in complete accordance with the Surrogate's decree of construction. When asked whether the wife of the Surrogate "is one of the committee of three Kappa's who negotiated and made the determination whether to purchase or not to purchase this property under the option" (such committee being that of the Association to which the Surrogate subsequently ordered the sum of $1,000 "to be paid directly"), the Surrogate made the shocking reply, "I don't know what bearing this has on the matter." It is of slight comfort indeed that, as disturbing as the conduct and decision of this case were, the record indicates little more than lack of understanding of relatively simple legal issues and lack of comprehension of the judicial standard which requires that even the appearance of impropriety be at all costs avoided. Condonation would be possible on no other ground. Decree modified, on the law and the facts, so as to delete the second decretal paragraph thereof,

so much of the first decretal paragraph thereof as refers to the court's motion and so much of the third decretal paragraph thereof as purports to impose a surcharge and to direct payment of $1,000 to St. Lawrence Alumnæ Association of Kappa Kappa Gamma, and, as so modified, affirmed, with costs to appellant payable from the estate, to the extent that unallocated funds may be available therefor. Gibson, P. J., Herlihy, Taylor, Aulisi and Hamm, JJ., concur.